IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TYLER ROBERTS; WILLIAM BENSON; PATRICK BROCKHAUS; JEREMY JANSSEN; LEEANN FARMS, INC.; RYAN LOSEKE; WAYNE LOSEKE; CRAIG SCHMIDT; DOUGLAS NOONAN; MID-NEBRASKA TRACTOR CO.; and NOONAN FARMS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> FARM CREDIT SERVICES OF AMERICA, ACA; and FCS OF AMERICA COLUMBUS, FLCA a/k/a FARM CREDIT SERVICES OF AMERICA, FLCA, <br><br> Defendants. | NO. 8:24CV466 <br><br> **MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION TO REMAND** |

## I.   INTRODUCTION

This action was originally filed in the District Court of Platte County, Nebraska, by eleven farmers and farming corporations, including Tyler Roberts; William Benson; Patrick Brockhaus; Jeremy Janssen; LeeAnn Farms, Inc.; Ryan Loseke; Wayne Loseke; Craig Schmidt; Douglas Noonan; Mid-Nebraska Tractor Co.; and Noonan Farms, Inc. (collectively, Plaintiffs). Filing 1-1. Plaintiffs bring four claims under Nebraska state law—two claims for fraudulent misrepresentation and two claims for negligent misrepresentation—related to indemnity payouts they received under federally reinsured crop insurance policies they had purchased from defendants Farm Credit

1

Services of America, ACA and FCS of America Columbus, FLCA a/k/a Farm Credit Services of America, FLCA (collectively, Defendants). Filing 1-1 at 5 (¶ 35). On December 4, 2024, Defendants removed this action to this Court asserting federal question jurisdiction. Filing 1 at 4. Almost a month later, each defendant filed an Answer to Plaintiffs' Complaint. Filing 15; Filing 16. Shortly thereafter, Plaintiffs filed a Motion to Remand on the ground that the Court lacks subject matter jurisdiction over their claims. Filing 20.

In many if not most cases involving federally reinsured crop insurance policies, federal jurisdiction exists and disputes regarding such policies are decided in federal court. However, in such cases, federal jurisdiction often exists because there is diversity of citizenship under 28 U.S.C. § 1332 or federal question jurisdiction under 28 U.S.C. § 1331.

In this case, Plaintiffs do not allege that Defendants breached the terms of the crop insurance contracts at issue. Such terms are dictated by federal law. Plaintiffs instead bring claims alleging fraudulent and negligent misrepresentation under Nebraska common law. Plaintiffs allege that before they purchased insurance policies from Defendants, Defendants told Plaintiffs that the policies would calculate indemnity payments using a method more favorable to Plaintiffs. Plaintiffs claim that this favorable method was not used when indemnity payments were eventually made under the policies. As a result, Plaintiffs seek to be compensated under that more favorable method.[1]

The legal question this Court must decide is whether federal jurisdiction exists such that this Court has jurisdiction to address the claims made. This Court concludes that no federal jurisdiction exists. Plaintiffs' claims arise under state law. Federal jurisdiction does not attach pursuant to the

---

[1] The Court does not address whether Plaintiffs' claims could survive a motion to dismiss for failure to state a claim.

doctrines of complete or ordinary preemption, and no other avenue for federal jurisdiction is available. This case must be remanded to Platte County, Nebraska, District Court.

### A.  Factual Background

The following facts are informative to the Court's analysis at this stage of the proceedings. Plaintiffs are all either farmers or corporations engaged in the business of farming in Platte County, Nebraska. Filing 1-1 at 1–2 (¶¶ 1–11). Defendant FCS of America Columbus, FLCA a/k/a Farm Credit Services of America, FLCA, is a wholly owned subsidiary of defendant Farm Credit Services of America, ACA. Filing 1-1 at 2 (¶ 15). Among other things, Defendants sell crop insurance policies to Nebraska farmers. Filing 1-1 at 3 (¶ 18). This case deals specifically with "Margin Protection" insurance, a type of crop insurance policy that is "designed to offer farmers coverage against an unexpected decrease in operating margin" and turns on the average county yields for a particular crop, type, and practice. Filing 1-1 at 3 (¶¶ 20–21). According to Plaintiffs, one key variable in the indemnity payment calculation under a Margin Protection policy is the "Final County Yield." Filing 1-1 at 4 (¶ 28). The Final County Yield depends in part on the "average county yield" of a specific insurable crop, type, or practice, such as an irrigated corn practice or a non-irrigated corn practice. Filing 1-1 at 5 (¶ 34). Once the Final County Yield is calculated using the relevant average county yield, the Final County Yield is then used to calculate the "Harvest Revenue." Filing 1-1 at 4 (¶ 28). As Plaintiffs describe the calculus, a low Final County Yield can result in a low Harvest Revenue. Filing 1-1 at 4 (¶ 28). A low Harvest Revenue, in turn, can result in a large indemnity payment to the insured farmer. Filing 1-1 at 4 (¶ 28).

Plaintiffs explain that the Margin Protection calculus typically requires the use of "separate" average county yields to calculate the indemnity payments for the irrigated practice and for the non-irrigated practice. Filing 1-1 at 5 (¶ 32). This means that the indemnity payments for an irrigated

3

practice policy are typically calculated using the average county yield of irrigated corn, while the indemnity payments for a non-irrigated practice policy are typically calculated using the average county yield of non-irrigated corn. Filing 1-1 at 5 (¶¶ 32–34). Plaintiffs allege that ahead of the 2022 and 2023 crop years, however, Defendants marketed to Platte County farmers Margin Protection policies that used a "blended" average county yield to calculate all indemnity payments. Filing 1-1 at 5 (¶ 31). In other words, the average county yield "used for calculating indemnity payments was going to be a 'blended' or average yield of **both** Irrigated and Non-Irrigated corn for all of Platte County." Filing 1-1 at 5 (¶ 31) (emphasis in the original). This blended average county yield was "particularly attractive" to Platte County farmers because "[a] 'blended' average county yield of both Irrigated and Non-Irrigated corn made it more likely that the 'Final County Yield' used to calculate the indemnity would be lower"—meaning the Harvest Revenue could be lower and in turn meaning the final indemnity payment could be greater. Filing 1-1 at 5 (¶ 34).

To demonstrate the advantages of using a blended average county yield in the indemnity calculations, Plaintiffs describe what could happen in the event of a drought. Filing 1-1 at 5 (¶ 34). According to Plaintiffs, a drought would likely reduce the non-irrigated corn yield in Platte County, but the irrigated corn yield would be "less affected." Filing 1-1 at 5 (¶ 34). Because a blended average county yield would consider the average county yield of both irrigated and non-irrigated corn, a lower non-irrigated corn yield would "have the effect of lowering the 'blended' average county yield" as a whole, as well as the Final County Yield (which the blended average county yield would be used to calculate). Filing 1-1 at 5 (¶ 34), 4 (¶ 28). A lower Final County Yield could then contribute to a lower Harvest Revenue, which in turn could result in a greater indemnity payment to an insured farmer with an irrigated practice—even though the irrigated practice's yield was not significantly affected by the drought. Filing 1-1 at 5 (¶ 34), 4 (¶ 28).

4

Plaintiffs claim that Defendants "expressly represented" that the Margin Protection policies for all Platte County corn acres would use a blended average county yield. Filing 1-1 at 5 (¶ 31). According to the Complaint, Plaintiffs only purchased Margin Protection coverage for their corn acres because of Defendants' representation that a blended irrigated and non-irrigated corn yield would be used to calculate indemnity payments. Filing 1-1 at 5 (¶ 35). Plaintiffs allege that Defendants' representation turned out to be false and that in reality the indemnity payments for both the irrigated and non-irrigated practices were calculated using the average county yield for irrigated corn only—not the blended average county yield. Filing 1-1 at 5 (¶¶ 36–37).

### B. Procedural Background

On October 31, 2024, Plaintiffs filed their Complaint and Jury Demand in the District Court of Platte County, Nebraska, asserting four "theories of recovery" against Defendants. Filing 1-1. The first and second theories of recovery are claims that Defendants fraudulently misrepresented that the Margin Protection policies for crop years 2022 and 2023, respectively, would be based on a blended average county yield of irrigated and non-irrigated corn. Filing 1-1 at 11 (¶¶ 67–72) (First Theory of Recovery), 11–12 (¶¶ 73–78) (Second Theory of Recovery). Similarly, the third and fourth theories of recovery are claims that Defendants negligently misrepresented that the Margin Protection policies for crop years 2022 and 2023, respectively, would be based on a blended average county yield. Filing 1-1 at 12 (¶¶ 79–83) (Third Theory of Recovery), 12–13 (¶¶ 84–88) (Fourth Theory of Recovery). For both crop years, Plaintiffs seek to recover the difference between the blended yield indemnity payout allegedly promised by Defendants and the irrigated yield indemnity payment Plaintiffs actually received. Filing 1-1 at 11–12.

On December 4, 2024, Defendants removed this action to this Court pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and Federal Rule of Civil Procedure 81. Filing 1 at 1. Although Defendants

acknowledge in their Notice of Removal that Plaintiffs' claims are "styled as tort claims," Defendants assert that the Court has federal question jurisdiction over the claims because they arise under and are controlled by the Federal Crop Insurance Act (FCIA), 7 U.S.C. §§ 1501 *et seq.*, and its implementing regulations. Filing 1 at 3–4 (¶¶ 14, 19). Defendants explain that the Federal Crop Insurance Corporation (FCIC) acts under the FCIA to "set[ ]coverage options and terms of crop insurance policies" and to reinsure crop insurance policies—like those at issue in this case—that "comply with the FCIA and its implementing regulations." Filing 1 at 2 (¶¶ 7–9). Defendants maintain that the "policy language and rate yields and how they are to be used to calculate indemnity under the crop insurance policies are set by the FCIC" alone. Filing 1 at 3 (¶ 16). According to Defendants, "Plaintiffs' Complaint raises a federal question and is preempted" by the FCIA because Plaintiffs seek "breach of contract damages" that could only be awarded if a state court enforced Plaintiffs' interpretation of the indemnity calculation—that is, the allegedly misrepresented blended yield calculation—instead of the FCIC-mandated irrigated yield calculation. Filing 1 at 3 (¶¶ 14–17). Defendants assert that Plaintiffs' claims belong in federal court because the Court "has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331." Filing 1 at 4 (¶ 19). Each defendant subsequently filed in this Court an Answer to Plaintiffs' Complaint. Filing 15; Filing 16.

On January 31, 2025, Plaintiffs filed a Motion to Remand and a brief supporting their Motion arguing that the Court lacks subject matter jurisdiction over their Complaint because the Complaint alleges "pre-contractual tort claims against Defendants"—not any federal claims. Filing 20; Filing 21 at 1. Plaintiffs contend that they have not affirmatively alleged any federal claims because they have not "asserted any claim directly under the federally reinsured crop insurance policies" or under the FCIA itself. Filing 21 at 3. Thus, Plaintiffs argue, the Court lacks subject matter jurisdiction over their claims unless the complete preemption doctrine applies. Filing 21 at 3. Plaintiffs maintain that

6

there is no complete preemption in this case and that as a result their claims should be remanded to the District Court of Platte County, Nebraska. Filing 21 at 5. The Court agrees.

## II. ANALYSIS

### A. Applicable Standards

"When a case is in federal court because it has been removed there by the defendant and it turns out the district court lacks subject matter jurisdiction to decide the claims, 'the case shall be remanded.'" *Schumacher v. SC Data Ctr., Inc.*, 33 F.4th 504, 514 (8th Cir. 2022). "Under 28 U.S.C. § 1441(a), a defendant may remove a civil action from state court to federal court when the action could originally have been brought in a federal district court." *Cagle v. NHC Healthcare-Maryland Heights, LLC*, 78 F.4th 1061, 1065 (8th Cir. 2023). "In other words, the federal court must have original jurisdiction over the case." *Minnesota by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703, 708–09 (8th Cir. 2023). The Court does not have original diversity jurisdiction over Plaintiffs' claims because Plaintiffs and Defendants are all Nebraska citizens. Filing 1-1 at 1–2 (¶¶ 1–14). Thus, Defendants' only viable argument is that the Court has original federal question jurisdiction over Plaintiffs' four tort claims. Filing 1 at 4 (¶ 19).

The Eighth Circuit Court of Appeals has explained the following about federal question jurisdiction:

> 28 U.S.C. § 1331 establishes that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." In addition to cases arising under federal positive law, federal courts also have jurisdiction over "claims founded upon federal common law." *Illinois v. City of Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972), *recognized as superseded by statute on other grounds*, *Am. Elec. Power Co., Inc. v. Connecticut*, 564 U.S. 410, 419, 131 S.Ct. 2527, 180 L.Ed.2d 435 (2011). This is known as federal question jurisdiction. Generally, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S.

> 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (citation omitted). However, the potential applicability of a defense arising under federal law doesn't create jurisdiction. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004). We call this pair of principles the well-pleaded complaint rule.
>
> But "a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) [footnote omitted]. There are two important exceptions to the well-pleaded complaint rule: when the state law claims (1) are completely preempted by federal law or (2) necessarily raise a substantial, disputed federal question. *[Rhode Island v.] Shell Oil [Products Co., L.L.C.]*, 35 F.4th [44], 51–52 [(1st Cir. 2022)]. If either exception is met, the case is removable although no federal question appears on the face of the complaint.

*Am. Petroleum Inst.*, 63 F.4th at 709. "The proponents of federal jurisdiction bear 'the burden to establish federal subject matter jurisdiction,' and 'all doubts about federal jurisdiction must be resolved in favor of remand.'" *Moore v. Kansas City Pub. Schs.*, 828 F.3d 687, 691 (8th Cir. 2016) (quoting *Cent. Iowa Power Co-op v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009)).

Plaintiffs argue that they "have asserted only state-law tort claims" and that "[w]ithout a federal claim appearing on the face of the complaint, the only arguable basis for jurisdiction falls under the complete preemption doctrine." Filing 21 at 3. Defendants do not contest Plaintiffs' characterization of their claims. Filing 24 at 2. Instead, Defendants contend that "[b]ecause Plaintiff's [sic] Complaint invites a state court to issue a decision 'that directly or indirectly affect[s] or govern[s] agreements, contracts or actions authorized by [the FCIA]' in contravention of controlling federal regulations, jurisdiction in this Court is proper." Filing 24 at 5 (quoting 7 C.F.R. § 400.352). In other words, Defendants argue, "federal law completely preempts the terms of [the] crop policies." Filing 24 at 3 (reduced from capitals). Because Plaintiffs' argument for remand turns on the inapplicability of the complete preemption exception to the well-pleaded complaint rule and because Defendants appear to invoke this very exception as a ground for this Court's jurisdiction,

8

the Court will consider whether the FCIA completely preempts Plaintiffs' tort claims. However, the Court notes here—and explains in more detail below—that although Defendants frame their argument in "complete preemption" language, they actually advance an "ordinary preemption" argument. Neither party addresses the second exception to the well-pleaded complaint rule, so the Court does not consider whether Plaintiffs' claims "necessarily raise a substantial, disputed federal question." *See Cent. Iowa Power Co-op.*, 561 F.3d at 912 ("Critically, the party seeking removal has the burden to establish federal subject matter jurisdiction. . . .").

### B. The Complete Preemption Doctrine Does Not Provide a Basis for Federal Jurisdiction in this Case

"Complete preemption is a narrow exception to the well-pleaded complaint rule." *Kellum v. Glister-Mary Lee Corp. Grp. Health Benefit Plan*, 115 F.4th 849, 853 (8th Cir. 2024). "The complete preemption rule applies when a federal statute 'wholly displaces the state-law cause of action,' such that 'a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.'" *Cagle*, 78 F.4th at 1066 (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)). "Complete preemption exists only where federal preemption is so strong that there is no such thing as a state-law claim. When federal law completely preempts state law, the cause of action is removable even if it's based entirely in state law." *Am. Petroleum Inst.*, 63 F.4th at 709–10 (internal quotation marks and citations omitted). *See also Johnson v. MFA Petroleum Co.*, 701 F.3d 243, 247 (8th Cir. 2012) ("A conclusion that there is complete preemption effectively maintains that the plaintiff has simply brought a mislabeled federal claim, which may be asserted under some federal statute." (internal quotation marks and citation omitted)). "To establish complete preemption, Congress must have intended the federal statute to provide 'the exclusive cause of action for the claim asserted and also set forth procedures and

9

remedies governing that cause of action.'" *Cagle*, 78 F.4th at 1067 (quoting *Beneficial Nat'l Bank*, 539 U.S. at 8). "Because '[t]he lack of a substitute federal [cause of] action would make it doubtful that Congress intended' to preempt state-law claims, 'without a federal cause of action which in effect replaces a state law claim, there is an exceptionally strong presumption against complete preemption.'" *Am. Petroleum Inst.*, 63 F.4th at 710 (quoting *Johnson*, 701 F.3d at 252) (bracketed text in the original).

"Complete preemption is very rare." *Am. Petroleum Inst.*, 63 F.4th at 710. As Plaintiffs point out, the Supreme Court has only applied the complete preemption doctrine to three statutes: § 301 of the Labor Management Relations Act, § 502(a) of ERISA, and §§ 85 and 86 of the National Bank Act. Filing 21 at 4. *See Am. Petroleum Inst.*, 63 F.4th at 710 (identifying the three statutes to which the Supreme Court has applied complete preemption). Although the Eighth Circuit has recognized complete preemption in a few additional areas, it has limited its recognition to "certain particular areas of special federal interest" and has emphasized that complete preemption only applies in "extraordinary" circumstances. *Johnson*, 701 F.3d at 248 (identifying "[s]uch special federal interests" to include the Federal Railroad Safety Act, the Railway Labor Act, and the Indian Gaming Regulatory Act); *Am. Petroleum Inst.*, 63 F.4th at 709 ("Complete preemption applies when the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." (internal quotation marks and citation omitted)).

Defendants use the phrase "completely preempts" in their briefing, Filing 24 at 3, but they do not bring forth arguments that would fulfill the requirements of this doctrine as applied to this case. For example, they make no effort to argue that Congress intended the FCIA to "provide the exclusive cause of action for the claim[s] asserted." *Cagle*, 78 F.4th at 1067 (internal quotation

marks and citation omitted). They also do not argue that the FCIA makes it so that "there is no such thing" as Plaintiffs' state law claims against a private crop insurance company nor do they point to any "federal cause of action which in effect replaces" Plaintiffs' state law claims in this case. *Am. Petroleum Inst.*, 63 F.4th at 709 (internal quotation marks and citation omitted). In fact, Defendants do not even make a conclusory claim that the FCIA completely preempts Plaintiffs' state law tort claims. *See generally* Filing 24.

Although Defendants arguably do not argue that the requirements of complete preemption have been met despite using that term, complete preemption does not provide a basis for federal jurisdiction in this case anyway. Although the Eighth Circuit Court of Appeals has not yet ruled on this issue, the majority of courts who have considered complete preemption in the crop insurance context have concluded that the FCIA does not completely preempt state law claims against private insurance companies reinsured by the FCIC.[2] This Court believes the Eighth Circuit would follow that majority.

---

[2] *See, e.g.*, *Rio Grande Underwriters, Inc. v. Pitts Farms, Inc.*, 276 F.3d 683, 687 (5th Cir. 2001) (concluding that there is no evidence that Congress intended to completely preempt state law claims against agents who sell reinsured crop insurance policies under the FCIA); *Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 679 (9th Cir. 1993) (determining that the "FCIA does not have the extraordinary preemptive force necessary for the application of the doctrine of complete preemption"); *Meyer v. Conlon*, 162 F.3d 1264, 1270 (10th Cir. 1998) (refusing to hold that the FCIA has completely preempted "all state law causes of action pertaining to FCIC crop insurance contracts" and concluding instead that "[t]he FCIA does not wholly preempt state law"); *Williams Farms of Homestead, Inc. v. Rain & Hail Ins. Servs., Inc.*, 121 F.3d 630, 635 (11th Cir. 1997) (concluding that for the purposes of federal question jurisdiction, the FCIA does not create "a federal cause of action against a private insurance company reinsured by the FCIC" and also concluding that the FCIA does not preempt state law causes of action against a private reinsured company); *Reimers v. Farm Credit Servs. AgCountry*, No. CIV. A3-00-168, 2001 WL 1820379, *3 (D.N.D. June 22, 2001) (concluding that "the FCIA does not have the extraordinary preemptive force necessary for the application of the doctrine of complete preemption"); *Agre v. Rain & Hail LLC*, 196 F.Supp.2d 905, 912 (D. Minn. Apr. 15, 2002) (declining to hold that the FCIA completely preempts state remedies); *Boze v. Great Am. Ins. Co.*, No. 2:21-cv-00002, 2024 WL 4298159, *5 (M.D. Tenn. Sept. 26, 2024) (noting that the FCIA "does not preempt all state law claims"); *Halfmann v. USAG Ins. Servs., Inc.*, 118 F.Supp.2d 714, 721 (N.D. Tex. Oct. 23, 2000) (concluding "that the FCIA does not completely preempt state law causes of action"); *Horn v. Rural Cmty. Ins. Servs.*, 903 F.Supp. 1502, 1506 (M.D. Ala. Nov. 2, 1995) (refusing to hold that the FCIA completely preempts state law causes of action); *Hyzer v. Cigna Prop. Cas. Ins. Co.*, 884 F.Supp. 1146, 1152–53 (E.D. Mich. May 11, 1995) (concluding that "the FCIA does not so completely preempt the area as to confer federal removal jurisdiction where, as here, the Act is not averred in the complaint but is raised as a defense"); *O'Neal v. CIGNA Prop. & Cas. Ins. Co.*, 878 F.Supp. 848, 851–52 (D.S.C. Feb. 28, 1995) (rejecting the argument that

Further, because "the FCIA does not have the extraordinary preemptive force necessary for the application of the doctrine of complete preemption," a suit that "contain[s] only state law claims, name[s] no federal defendants, and lack[s] diversity" must be remanded to state court. *Holman*, 994 F.2d at 668–69 (affirming the district court's order dismissing for lack of subject matter jurisdiction the plaintiffs' negligence, bad faith, and breach of contract claims against a private crop insurer on the grounds that complete preemption did not apply to the FCIA). *See, e.g.*, *Reimers*, No. CIV. A3-00-168, 2001 WL 1820379, *6 (remanding to the District Court for Stutsman County, State of North Dakota, the plaintiffs' claims for breach of contract, professional negligence, misrepresentation and fraud, and two statutory violations after concluding that "the FCIA does not have the extraordinary preemptive force necessary for the application of the doctrine of complete preemption"); *Agre*, 196 F.Supp.2d at 913 (remanding the plaintiffs' breach of contract claims to state court in an FCIA case after determining that "Congress knew how to preempt state claims; this Court is convinced it chose not to do so here"); *Horn*, 903 F.Supp. at 1506 (remanding the plaintiff's claims for breach of contract, bad faith, and defamation to state court because the "plaintiff's complaint simply does not state a cause of action under federal law" and "Congress did not intend for the FCIA to completely preempt this area of the law"); *O'Neal*, 878 F.Supp. at 852 (remanding to state court the plaintiff's claims for negligence, breach of contract, bad faith, and a statutory violation because "complete preemption of Plaintiff's claims does not exist"). *See also Zych v. Haugen*, No. 06-CV-15-237, 2017

---

the FCIA completely preempted the plaintiff's state law claims). *See also J.O.C. Farms, L.L.C. v. Fireman's Fund Ins. Co.*, 737 Fed.Appx. 652, 654 (4th Cir. 2018) (unpublished per curiam) (collecting cases in which "numerous courts have held that the FCIA and its regulations do not completely preempt state law causes of action" but not discussing those cases any further because the defendants' argument and the district court's holding relied on ordinary conflict preemption alone). *But see Owen v. Crop Hail Mgmt.*, 841 F.Supp. 297, 304 (W.D. Mo. Jan. 18, 1994) (concluding that the FCIA completely preempts state law); *Brown v. Crop Hail Mgmt., Inc.*, 813 F.Supp. 519, 526 (S.D. Tex. Feb. 3, 1993) (holding that federal law completely preempts all state law claims against either the FCIC or private insurance companies reinsured by the FCIC).

WL 3222325, *6 (Minn. Ct. App. July 31, 2017) (state court ruling on a plaintiff's negligence claim against crop insurers); *Plants, Inc. v. Fireman's Fund Ins. Co.*, No. M2011-02063-COA-R3-CV, 2012 WL 3291805, *13 (Tenn. Ct. App. Aug. 13, 2012) (state court ruling on a plaintiff's negligent misrepresentation and negligence claims against a crop insurer).

The doctrine of complete preemption does not provide this Court jurisdiction in this case. The fact that the torts alleged have to do with a federal crop insurance policy does not provide this Court with federal jurisdiction. The appropriate disposition is for this case to be remanded to state court.

### C. Ordinary Preemption is Not a Basis to Give this Court Federal Jurisdiction

Ordinary preemption "is a less aggressive form[ ] of preemption" that "do[es] not provide a basis for removal." *Am. Petroleum Inst.*, 63 F.4th at 710. Ordinary preemption applies (1) "where a federal law explicitly prohibits or displaces state regulation in a given field," (2) "where a state statute directly conflicts with federal law," and (3) "where a federal law completely occupies the field of regulation so that by implication there is no room for state regulation and the coexistence of federal and state regulation is not possible." *Johnson*, 701 F.3d at 248 (internal quotation marks and citations omitted). While complete preemption is a "jurisdictional doctrine" that is "used to remove state claims to federal courts," *Markham v. Wertin*, 861 F.3d 748, 759–60 (8th Cir. 2017) (internal quotation marks omitted), "[o]rdinary preemption is a federal defense that exists where a federal law has superseded a state law claim," *Johnson*, 701 F.3d at 248. "Such a defense is not sufficient to establish federal jurisdiction even in circumstances where it appears likely that the case would eventually be dismissed on the basis of preemption." *Id.* at 247. *See also Cagle*, 78 F.4th at 1066 ("The potential availability of a federal defense does not create federal question jurisdiction.").

It appears to the Court that Defendants actually make an argument for ordinary preemption despite calling it complete preemption. Defendants contend that the damages Plaintiffs seek—"the difference between the 'blended' yield indemnity policy they allege was marketed to them and the irrigated yield indemnity used in the crop insurance policy approved by the FCIC"—could only be awarded if a court "enforce[d] a crop insurance policy that did not exist." Filing 24 at 4–5. According to Defendants, "only one form of the crop insurance policies could exist for the 2022 and 2023 policy periods, the form set forth in the regulations issued by the FCIC, and that form did not include 'blended' yield indemnity." Filing 24 at 4. Defendants warn that "ask[ing] a state court to consider or decide" terms that contradict those set forth in the FCIA and its accompanying regulations "would invite enforcement of state or local laws that are inconsistent with the 'contracts, agreements, and regulations' of the FCIA." Filing 24 at 4 (quoting 7 U.S.C. § 1506(l)). In other words, Defendants argue that "Plaintiffs' claims are preempted because they seek a remedy that invokes an interpretation and enforcement of a crop insurance policy that is in conflict with the FCIA and its enacting regulations." Filing 24 at 3. This is an ordinary preemption defense.

The Court does not consider the merits or applicability of Defendants' ordinary preemption defense. It may be that the state court might find ordinary preemption applicable. This Court merely holds that ordinary preemption does not, and cannot, provide a basis for federal jurisdiction in this case. See *Am. Petroleum Inst.*, 63 F.4th at 710.

### III. CONCLUSION

Because the Court lacks subject matter jurisdiction over Plaintiffs' claims, the Court grants Plaintiffs' Motion to Remand this case to the District Court of Platte County, Nebraska. Accordingly,

IT IS ORDERED:

1. Plaintiffs' Motion to Remand, Filing 20, is granted.

Dated this 1st day of April, 2025.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge